IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

LINDA R. PROGE                                           PLAINTIFF

vs.                                           CIVIL ACTION NO. 3:13cv310-SAA

COMMISSIONER OF SOCIAL SECURITY                      DEFENDANT

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the applications of plaintiff Linda R. Proge for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI. Docket 1. Proge filed her applications on August 26, 2010, alleging disability beginning June 30, 2010. Docket 11, pp. 123-124, 125-126, 127-128. The Commissioner denied her claim initially and on reconsideration; plaintiff challenged the denial of benefits and filed a request for a hearing before an Administrative Law Judge (ALJ). Docket 11, p. 58-61. She had a representative at the administrative hearing on July 2, 2012. Docket 11, pp. 25-53. The ALJ issued an unfavorable decision on September 20, 2012 [Docket 11, pp. 8-20], and the Appeals Council denied her request for review. Docket 11, p. 1-6. Plaintiff filed the instant appeal, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on September 25, 1964 and was forty-seven years old on the date of the ALJ's hearing decision. Docket 11, p. 30. She has a high school education. *Id.* She was previously employed as a material handler, machine operator#2, order filler/puller, forklift operator and box maker. Docket 11, pp. 23, 153. She claimed disability due to "[carpal tunnel] surgery on both hands, shoulder problems [and] can't grip with hands" Docket 11, pp. 152.

The ALJ determined that plaintiff suffers from "severe" impairments of "status post bilateral carpal tunnel release with continued wrist pain and torn right rotator cuff" but she does not have impairments or a combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). Docket 11, p. 13-17, Finding Nos. 3& 4. Relying on the evidence in the record, the ALJ concluded that plaintiff retained the RFC to "occasionally lift/carry up to ten pounds, frequently lift/carry up to five pounds, walk/stand for six hours in an eight hour work day, and sit for six hours in an eight hour work day. The claimant could occasionally climb. In addition, she could frequently balance, stoop, kneel, crawl, finger, handle and reach. The claimant can occasionally work around heights, frequently work around moving machinery, and frequently drive." Docket 11, p. 17, Finding No. 5. The ALJ found the plaintiff's subjective complaints less than fully credible and that her allegations of stringent functional limitations were greatly disproportionate to the objective medical evidence. *Id* at 17-18.

Relying upon the testimony of a vocational expert ("VE"), the ALJ found that plaintiff's "severe" impairments prevented her from returning successfully to her past relevant work. Docket 11, p. 19, Finding No. 6. Nevertheless, considering the plaintiff's age, education, work

experience and RFC, the ALJ determined that there are jobs that exist in significant number in the national economy that the plaintiff is able to perform [Docket 11. p. 19, Finding No. 10], including laminator #1, bench hand assembler, or final assembler. *Id.* at 20. Accordingly, the ALJ determined that the plaintiff is not under a disability as defined by the Social Security Act. Docket 11, p. 20, Finding No. 11.

The plaintiff requested review of the decision by the Appeals Council. Docket 11, p. 7. After reviewing the record, including the request for review submitted by counsel for the plaintiff, the Appeals Council denied plaintiff's request for review because the information did not provide a basis for changing the ALJ's decision. *Id* at 1-5. Plaintiff now appeals to this court claiming that the ALJ erred by (1) not giving proper weight to plaintiff's treating physician's RFC, (2) not assigning weight to the opinions of Dr. Natarajan and Dr. Dalal, and (3) drawing negative inferences from plaintiff's failure to seek medical treatment or her refusal to have surgery for her shoulder. Docket 17.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim.

---

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[7] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[8] *Muse*, 925 F.2d at 789.

*Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

1. <u>ALJ's assignment of "little weight" to Dr. Varner's opinion</u>

In his decision, the ALJ references plaintiff's carpal tunnel syndrome and DeQuervain's release of both wrists in 2007, before plaintiff's alleged onset date. Docket 11, p. 14. He notes that she reached maximum medical improvement and was released from her doctor's care in August 2007. *Id.* With regard to Dr. Varner's opinion, the ALJ states,

---

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

5

> After a prolonged absence of nearly four years, the claimant resumed medical treatment with Dr. James Varner, the physician who previously performed her carpal tunnel procedures, in February 2011. Dr. Varner noted that the claimant worked as a forklift operator for the past two years. His treatment notes refer to minimal wrist swelling and mild digital numbness without neurological deficits. He also found that the claimant could make a full fist without difficulty and the results of her Tinel's and Phalen's exams were negative. Through the course of his examinations, the doctor consistently released the claimant for regular duty work status, even though his notes show she was no longer employed in February 2011. (Exhibits 9F and 12F).
>
> The undersigned considered the opinion tendered by Dr. Varner in his medical source statement, wherein he repeated his earlier diagnosis of bilateral carpal tunnel syndrome and DeQuervain's tenosynovitus. He also stated that even though these conditions resulted in pain and numbness of both hands, she could perform a mixed range of activities at the sedentary and light exertional level. However, the doctor also concluded that the claimant was incapable [sic] of performing low stress jobs and would miss four or more work days per month. Dr. Varner is a treating source; however, a number of his opinions are not well supported by acceptable clinical and diagnostic techniques consistent with the degree of limitation assessed by Dr. Varner. Moreover, contradictory evidence within the record either contradicts or fails to support the doctor's own assessment. For these reasons, the undersigned accords Dr. Varner's opinion little weight.

Docket 11, p. 15. Plaintiff argues that the ALJ erred by affording Dr. Varner's opinion "little weight" and that he should have re-contacted Dr. Varner to resolve any contradiction between Dr. Varner's opinion and other evidence in the record, citing 20 C.F.R. 404.1527(d)(2), SSR 96-2p and *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) in support.[11] Docket 17, p. 7-8.

The Fifth Circuit requires that all medical opinions be considered in determining the

---

[11] Although plaintiff argues that the ALJ was required to recontact Dr. Varner under 20 C.F.R. §§ 404.1512(e), 416.912(e), 404.1527(c)(3) and 404.1527(c)(3), these recontacting regulations have been repealed. 77 Fed. Reg. 10651-01 (Feb. 23, 2012). The requirement to recontact a treating physician is no longer required in these circumstances. The purpose of repealing and revising these recontacting regulations is to give ALJ's more flexibility in determining how to obtain information and to allow decisions on claims to be made ore quickly and efficiently based on the information provided through the claims process. 77 Fed. Reg. 10651-01 (Feb. 23, 2012). The court need not address this issue.

disability status of a benefits claimant. *Newton v. Apfel,* 209 F.3d 448, 456 (5th Cir. 2000); 20 C.F.R. §§ 404.1527(b), 416.927(b). Nonetheless, opinions on ultimate issues, such as disability status under the regulations, are reserved exclusively to the ALJ. *Id.* at 455; 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Statements by medical sources to the effect that a claimant is "disabled" are not dispositive, but an ALJ must consider all medical findings and evidence that support such statements. *Id.; see also Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507 (S.D. Tex. 2003). Although important, the treating physician's opinions are not conclusive. *Id.* "[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir.1994), quoting *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985). The Fifth Circuit has recognized "good cause" exceptions, including "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.* citing *Scott,* 770 F.2d at 485; see also *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005).[12]

The Commissioner makes two valid points in response to plaintiff's argument: (1) the ALJ has the sole responsibility for determining what weight should be given the proffered medical evidence, *Johnson v. Bowen*, 864 F. 2d 340, 347 (5th Cir. 1988); and (2) an ALJ may reject a physician's opinion when the evidence supports a contrary conclusion, *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Docket 18, pp. 6-7. In this case, Dr. Varner's Residual Functional Capacity Questionaire contained numerous inconsistencies between his own treatment notes and

---

[12]Plaintiff cites to an unpublished Sixth Circuit case, *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411 (6th Cir. 2012), for a substantial portion of her argument. Although the analysis in the case is informative, this court is not bound by the Sixth Circuit decision. Further, the standard articulated by the Sixth Circuit is not the same as that in the Fifth Circuit. *See Newton*, 209 F.3d 488.

his stated RFC opinion. For example, his RFC questionnaire assessment states plaintiff has pain and numbness in both hands and limited grip strength (Docket 11, p. 262), while his notes reflect "some tenderness over the dorsal aspect of the right ring and long fingers. . . . some mild stiffness in terminal flexion. . . . Phalen's exam is negative. . . . Tinel's exam is negative." (Docket 11, p. 274); the RFC limits plaintiff to low stress, light or sedentary level jobs and states that she is likely to miss more than four days of work per month (Docket 11, 264-267), yet his medical records reflect plaintiff may return to "regular duty work status" (referenced each visit from 2/1/2011 through 11/3/2011 at Docket 11, p. 270, 271, 272, 273, 274). Docket 11, 262-268. Based on these inconsistencies, as well as the other medical evidence in the record, the ALJ afforded Dr. Varner's opinion little weight because there exists contradictory evidence within the record as a whole, and Dr. Varner's own records fail to support his RFC Questionaire assessment. The court finds that the ALJ's decision was well reasoned and supported by substantial evidence. The plaintiff's argument on this point must fail.

2. <u>The ALJ Failed to assign any weight to the opinions of Drs. Natarajan and Dalal</u>

Next plaintiff argues that the ALJ erroneously neglected to assign any weight to be afforded the opinion of Dr. Natarajan (who examined plaintiff in June 2012) and Dr. Dalal (who examined plaintiff in July 2008), and this error mandates remand. Docket 17, pp. 15-18. According to plaintiff, the fact that the ALJ failed to discuss the weight he accorded these opinions means that it is possible that the ALJ was "cherry picking" or "playing doctor," which is not allowed. *Id.* at 18; *see Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). Although the court agrees that an ALJ may not cherry pick portions of various medical opinions in order to create a specific RFC or condition, agency regulations do provide that an ALJ will consider and evaluate

medical opinions in the record. *See* 20 C.F.R. §§ 404.1527, 416.927. These regulations require only that the ALJ consider and evaluate medical opinions and do not require the ALJ to state the weight given to each symptom and diagnosis in the administrative record. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Further, the court agrees that an ALJ may not "pick and choose" only that evidence which supports his decision, but must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence and reasons for his conclusions regarding the evidence. *See Rasche v. Astrue,* 2008 WL 4151346, *14 (N.D.Miss. 2008); *Armstrong v. Sullivan,* 814 F. Supp 1364, 1373 (W. D. Tex 1993); *Green v. Shalala,* 852 F.Supp. 558 (N.D. Tex. 1994). Likewise, an ALJ may not establish physical limitations or lack of limitations without medical proof to support such a conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4, (N.D. Miss. 2008), citing Nguyn *v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

The ALJ in this case discussed the findings of both Dr. Natarajan and Dr. Dalal in his decision. Docket 11, p. 14. Despite not recognizing Dr. Dalal by name, the ALJ specifically referred to Dr. Dalal's records and his findings. *Id.,* citing Exhibit 2F. There is no evidence, other than plaintiff's speculation, that the ALJ was "cherry picking" or "playing doctor." In fact, the ALJ's determination of plaintiff's RFC was in keeping with both doctors' findings. The court finds that the ALJ's opinion was well reasoned, that he properly assessed each medical opinion and that his decision is well supported by this evidence. Plaintiff's argument on this point also must fall.

3.  Plaintiff's lack of medical treatment and refusal to have surgery

The ALJ questioned plaintiff at the hearing about her decision not to have surgery for her

9

torn rotator cuff:

> Q. Now, m'am, I neglected – have they talked to you about surgery on your shoulder?
> A. Yeah, I refused that's since me, by myself, I don't have nobody to help me that much. I had a hard time taking care of myself when I had surgery on one hand at a time and then, it ain't doing no good to my hands, so why'd I want to go the one on the shoulder?
> Q. Okay then.

Docket 11, p. 47. In later deciding the case, the ALJ noted that

> claimant ceased to seek medical treatment or consult with physicians for over a year, when doctors later obtained a right hand x-ray in 2010. However, x-ray results merely identified minimal degenerative changes of the distal joint of the pinky finger, without any additional findings (Exhibits 1F, 2F, 3F, and 4F).

*Id.*, at 14. After a discussion of the medical evidence, the ALJ found

> The facts in the record do not dispute that the claimant has health conditions which may cause some difficulties. However, the evidence further suggests that the claimant's symptoms may not be accurately reported, do not exist at the level of severity assumed by the claimant's testimony at hearing, or other factors have minimal impact upon the claimant's ability to engage in work activity. The claimant's allegations of disability due to rotator cuff tear, are not fully credible, particularly in light of her refusal to have shoulder surgery.

*Id.*, at 18.

Plaintiff argues that the ALJ violated SSR 96-7p, which requires that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment" without first considering the evidence of record which may explain "infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7P (S.S.A July 2, 1996). In addition to this directive, SSR 96-7p also states that an ALJ may determine a plaintiff's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this

10

failure." *Id.*

The ALJ found the plaintiff not entirely credible regarding the intensity, persistence and limiting effects of her impairments and the extent to which they are inconsistent with the ALJ's RFC determination. Docket 11, p. 17. The plaintiff casts this finding as one made against the plaintiff because she did not seek more medical treatment. Docket 17, p. 22.

The Fifth Circuit has routinely given great deference to an ALJ's credibility determination. *Spruill v. Astrue*, 299 Fed.Appx. 356, 358 (5th Cir. 2008); *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994) (credibility conclusions are "precisely the kinds of determinations that the ALJ is best positioned to make"). A review of the entire record, and particularly the medical evidence of record, convinces the court that the ALJ properly assessed plaintiff's testimony. No physician, treating or otherwise, assessed plaintiff with limitations as restrictive as those plaintiff claims to suffer. The ALJ properly considered the medical record as a whole. He directly questioned plaintiff on the record at the hearing to determine her reasons for her decision not to have surgery on her rotator cuff. Plaintiff unequivocally stated that she simply did not want to go through the surgery and its aftermath. She gave no indication whatsoever that her decision was financially based, and there is not evidence elsewhere in the record to support a claim that her decisions not to seek medical care for other conditions were due to lack of funds.

It is entirely within the purview of the ALJ to examine lack of treatment or treatment decisions when determining credibility. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). His review of the evidence and determination of plaintiff's credibility is supported by substantial evidence. This claim of error is without merit.

## IV. CONCLUSION

After thoroughly reviewing the evidence presented to the ALJ and to the Appeals Council and the record as a whole, the court holds that the ALJ's opinion was supported by substantial evidence, and the decision of the Commissioner should be affirmed. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 16th day of September, 2014.

      /s/ S. Allan Alexander
     UNITED STATES MAGISTRATE JUDGE